IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMIE COLLINS, on behalf of Plaintiff and the class members described herein, <br><br> Plaintiff, <br><br> vs. <br><br> ROBINSON ECONOMIC SERVICES, also known as ROBINSON ECONOMIC SERVICES, LLC, doing business as CLEAR AIR LENDING; ROBINSON ECONOMIC DEVELOPMENT CORPORATION; CT2022 FIN 1 LLC; and DOES 1-20, <br><br> Defendants. | 1:23-cv-16809 |

## COMPLAINT – CLASS ACTION

1. Plaintiff Jamie Collins brings this action to secure redress from predatory and unlawful loans (such as Exhibit A). The loans are made in the name of Defendant Robinson Economic Services, also known as Robinson Economic Services, LLC, doing business as Clear Air Lending ("CAL"). Defendants Robinson Economic Development Corporation ("REDC"), CT2022 Fin 1 LLC ("CT2022") and Does 1-20 are involved in the making, funding, and collection of the loans.

2. Plaintiff seeks a declaratory judgment that the loans are void (Count I), damages pursuant to the Illinois Interest Act, 815 ILCS 205/6 (Count II), damages and injunctive and declaratory relief pursuant to the Illinois Predatory Loan Prevention Act, 815 ILCS 123/15-1-1 *et seq.* and the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.* (Count III – the Predatory Loan Prevention Act provides that violations are a violation of the Illinois Consumer Fraud Act), and treble damages under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964 (Count IV).

**JURISDICTION AND VENUE**

3. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 (general federal question), 18 U.S.C. § 1964 (RICO), 28 U.S.C. §1337 (interstate commerce), and 28 U.S.C. § 1367 (supplemental jurisdiction). Jurisdiction may also exist under the Class Action Fairness Act, 28 U.S.C. § 1332(d).

4. This Court has personal jurisdiction over Defendants because they:

a. Knowingly participated in the making and collection of unlawful loans to Illinois residents. In similar actions against purported "tribal" lenders, courts have held that personal jurisdiction over the persons involved in making the loans exists in the state where the borrower obtained a loan via the Internet, and in which loan funds were disbursed via ACH transfer. *Gingras v. Rosette*, 5:15cv101, 2016 U.S. Dist. LEXIS 66833, 2016 WL 2932163, at *2-3, *9 (D. Vt. May 18, 2016), *aff'd sub nom. Gingras v. Think Fin., Inc.*, 922 F.3d 112 (2d Cir. 2019) (finding that tribal lending entity's contacts with Vermont "would have been sufficient to subject [the tribal entity] to personal jurisdiction in Vermont" for purposes of claims for violations of state and federal law, including state usury laws and RICO, where tribal entity operated a website that advertised loans in Vermont, sent emails and loan applications to Vermont consumers and transferred loan principal to consumers' Vermont bank accounts); *Duggan v. Martorello*, 18cv12277, 2022 U.S. Dist. LEXIS 58075, at *33-34, 2022 WL 952183 (D. Mass. Mar. 30, 2022); *Dawkins v. Blue Dart Ventures*, 8:20cv2353, 2021 U.S. Dist. LEXIS 130297 (M.D. Fla. Apr. 1, 2021).

b. Selected which states to offer loans in, thereby targeting those states. *Illinois v. Hemi Group, LLC,* 622 F.3d 754, 760 (7th Cir. 2010).

5. Venue is proper because acts to obtain and collect the loans impacted Plaintiff in Illinois.

6. Article III is satisfied because actions for statutory damages and invalidation of loans for usury were entertained by the courts of England and the United States in 1787. English Usury Act of 1713, 12 Anne Session 2 c. 17. All thirteen original American states replaced the English

usury statutes with their own usury laws between 1641 and 1791. Christopher L. Peterson, *Usury Law, Payday Loans, and Statutory Sleight of Hand: Salience Distortion in American Credit Pricing Limits*, 92 Minnesota Law Review 1110, 1116-18 (April 2008), summarizing statutes allowing 5% to 8% interest.

## PARTIES

7. Plaintiff Jamie Collins is a natural person and resident of Cook County, Illinois.

8. Defendant CAL claims to be a "corporate subdivision of the Robinson Economic Development Corporation, a wholly owned federally chartered corporation and an economic development arm of the Robinson Rancheria of Pomo Indians of California (the 'Tribe'), a federally recognized and sovereign Native American Indian Tribe." (Exhibit B) Plaintiff disputes this. It uses the addresses PO Box 1429, Nice, CA 95464 and 1545 E. State Highway 20, Nice, CA 95464-8619.

9. Defendant Robinson Economic Development Corporation is a corporation with offices at 1545 E. State Highway 20, Nice, CA 95464-8619.

10. CAL and Robinson make high-interest Internet loans via the website www.clearairlending.com.

11. The website is registered to an address in Ukiah, California, about thirty miles from the Robinson Rancheria. (Exhibit C)

12. Defendant CT2022 is a limited liability company organized under the laws of Oklahoma with its principal office at 5608 S. 14th Street, Fort Smith, AR 72901. Its registered agent and office is Capitol Document Services, Inc. 1833 S. Morgan Road, Oklahoma City, OK 73128. CT2022's principle office, 5608 S. 14th Street, Fort Smith, AR 72901, is a small office building that houses a number of high-interest lenders.

13. Defendant CT2022 provides funds used to make loans via www.clearairlending.com.

14. To secure repayment, CT2022 has filed UCC-1 financing statements (Exhibits D-E) against CAL and REDC, disclosing a security interest in "any and all net receipts, receivables, net revenues, and rents received by the Debtor from the operation of any business or enterprise or

otherwise," "all present and future deposit accounts of the Debtor, including but not limited to the Collateral Deposit Account and the Collection Account, the funds on deposit and all proceeds therefrom, and any and all certificates of deposit," "all property and assets, real or personal, tangible or intangible, now existing or hereafter acquired, of Debtor," and "Eligible Assets."

15. "Eligible Assets" are defined as "all consumer loans made pursuant to Consumer Contracts if such Consumer Contracts: (a) comply with the Eligibility Criteria established by Debtor and Lender; and (b) are pledged to lender and in respect of which Lender has a perfected first priority lien not subject to any other liens or claims of any kind."

16. "Consumer Contract" is defined to mean "(a) a cash advance contract and the Truth in Lending Act disclosure executed by a Consumer Obligor in favor of Debtor relating to an unsecured consumer loan made in conformity with all applicable Consumer Financial Services Laws and Tribal Laws with a Consumer Obligor; (b) all rights, title, and interest, including all rights of repayment, under the Consumer Contract Documents and all instruments and documents arising therefrom or relating thereto; and (c) all proceeds arising therefrom or relating thereto (including, but not limited to, any personal property (if any) acquired in connection with the exercise of any remedy relating to a Consumer Contract."

17. "Consumer Contract Documents" are defined as "all instruments, promissory notes, documents, and agreements entered into, by a Consumer Obligor with Debtor, and evidencing or executed in connection with the application for or disclosure with respect to a Consumer Contract, including, but not limited to, a Consumer Contract."

18. Thus, CT2022 has a security interest in all loans made through www.clearairloans.com and the proceeds of such loans. The extent of the security interest makes CT2022 the sole source of funding for loans made through www.cleararloans.com.

19. The UCC-1 filing was made by Connor & Winters, a law firm whose declared fields of practice include Indian Law and tribal sovereign immunity, and which has previously been involved with "rent a tribe" lending operations. *Martorello v. Williams*, No. 19-MC-5-JED-JFJ, 2019

U.S. Dist. LEXIS 63881 (N.D. Okla. Apr. 15, 2019) (Exhibit F).

20. Defendants Does 1-20 are other natural or artificial persons involved in the making or funding of short-term, high-interest loans via www.clearairlending.com.

## FACTS

21. On or about August 29, 2023 Plaintiff Collins obtained a $500 loan from www.clearairlending.com over the internet, with a disclosed annual percentage rate of 699.9943%. (Exhibit A)

22. Plaintiff made payments on the loan, including interest.

23. Defendants claim that amounts are still outstanding.

24. Exhibit A is written on a standard form loan agreement used by Defendants on a regular basis.

25. Defendants regularly make loans to individuals in Illinois at such rates.

26. The loan was obtained for personal, family or household purposes and not for business purposes.

27. At no time has any Defendant had a license from the Illinois Department of Financial and Professional Regulation or a state or federal banking or credit union charter, entitling it to make loans to Illinois residents at more than 9% interest.

28. Defendants nevertheless advertise and make loans to Illinois residents at rates greatly exceeding 9%.

29. The website www.clearairlending.com states, "The Tribe does not allow access or accept applications for this service from residents of all locations, and the service may or may not be available at your location. The location from which the tribe chooses to allow access to its jurisdiction may change from time to time without notice." (Exhibit G)

30. Defendants were aware that Illinois and other states have rate limitations that applied to their loans.

31. Defendants determined which states to make loans in based on their estimation of

the likelihood of public or private enforcement.

32. Defendants decided to ignore Illinois' rate limitations because they concluded that Illinois authorities were unlikely to take action to enforce them against them.

33. Plaintiff signed the loan agreement electronically, while in Illinois.

34. The funds were transferred electronically to Plaintiff's bank accounts in Illinois.

35. On information and belief, the transfer was carried out by one of the Does.

36. Repayment was to be made by ACH debit of Plaintiff's bank account in Illinois.

37. The ACH debits were also carried out by one of the Does.

38. Plaintiff was in Illinois at all times.

39. At no time did Plaintiff visit the Robinson Rancheria or any business premises of any Defendant in connection with the loan.

40. On information and belief, while the Tribe is the nominal owner of REDC and CAL, covenants in the lines of credit used as working capital to fund loans require the Tribe to hire only investor-approved managers, underwriters, marketers, software vendors, and other service providers.

41. On information and belief, the loan covenants also require the Tribe to waive sovereign immunity with respect to the non-tribal investors, leaving the Tribe vulnerable to legal action.

42. Thus, the Tribe exerts no meaningful control over the business, how it is operated, who it lends to, and so forth. Any tribal involvement does not go beyond the hiring of a handful of tribal members to work as phone customer service representatives or similar low-level jobs.

## **ILLINOIS PROHIBITIONS ON PREDATORY LOANS**

43. Effective March 23, 2021, the Illinois Predatory Loan Prevention Act made it unlawful for anyone other than a bank to make loans to Illinois residents at annual percentage rates in excess of 36%. 815 ILCS 123/15-1-1 *et seq*. "Any loan made in violation of this Act is null and void and no person or entity shall have any right to collect, attempt to collect, receive, or retain any

principal, fee, interest, or charges related to the loan." 815 ILCS 123/15-5-10.

44. Under 815 ILCS 123/15-10-5(b), "[a]ny violation of this Act, including the commission of an act prohibited under Article 5, constitutes a violation of the Consumer Fraud and Deceptive Business Practices Act."

45. Both before and after March 23, 2021, it was unlawful for anyone who did not have a bank or credit union charter or a consumer lending license issued by the Illinois Department of Financial and Professional Regulation to make loans at more than 9% interest. 815 ILCS 122/1-15, 4-5; 205 ILCS 670/1.

46. Any loans to Illinois residents at more than 9% that are made by unlicensed persons are void and unenforceable. 205 ILCS 670/20(d) ("Notwithstanding any other provision of this Section, if any person who does not have a license issued under this [Consumer Instalment Loan] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the person who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan."); 815 ILCS 122/4-10(h) ("(h) Notwithstanding any other provision of this Section, if a lender who does not have a license issued under this [Payday Loan Reform] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the lender who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan.").

47. Loans made by an unlicensed lender to an Illinois resident at an interest rate exceeding 9% violate the Interest Act, 815 ILCS 205/4, and are subject to statutory damages under 815 ILCS 205/6.

48. Illinois' criminal usury statute provides that the making of a loan by an unlicensed person at more than 20% interest is a felony. 720 ILCS 5/17-59 (formerly 720 ILCS 5/39-1 *et seq*). It applies to a person who "while either within or outside the State, by his own conduct or that of another for which he is legally accountable," engages in conduct that amounts to an offense if "the offense is committed either wholly or partly within the State." 720 ILCS 5/1-5.

49. Contracts made in violation of licensing requirements intended to protect the public, or in violation of criminal laws imposing substantial penalties, are void. *Chatham Foot Specialists, P.C. v. Health Care Serv. Corp.*, 216 Ill. 2d 366, 380, 837 N.E.2d 48 (2005). Neither choice of law clauses or other contractual devices can be used to avoid invalidation of loans made at criminally usurious rates. *Madden v. Midland Funding, LLC,* 237 F. Supp. 3d 130, 150 (S.D.N.Y. 2017) ("That New York chose to criminalize such conduct is further evidence that its usury prohibition is a fundamental public policy."); *MacDonald v. CashCall, Inc.,* 16cv2781, 2017 U.S. Dist. LEXIS 64761, 2017 WL 1536427, *7 (D.N.J., April 28, 2017).

50. The Illinois Department of Financial and Professional Regulation has repeatedly brought cases against unlicensed out of state tribal and other lenders that make loans via the Internet or similar means to Illinois residents in Illinois. *E.g., In the Matter of Red Leaf Ventures, LLC,* No. 12 CC 569); *In the Matter of Money Mutual, LLC*, No. 12 CC 408; *In the Matter of Hammock Credit Services*, No. 12 CC 581; *In the Matter of Makes Cents, Inc., d/b/a Maxlend*, No. 17 CC 133.

51. The excessive interest charges imposed by Defendants were willful.

## INVALIDITY OF CLAIM OF TRIBAL IMMUNITY

52. In an attempt to evade prosecution under usury laws of states like Illinois, online lenders frequently create an elaborate charade claiming their otherwise illegal businesses are entitled to the sovereign immunity of Native American tribes.

53. However, an entity must function as a legitimate "arm of the tribe" in order to fall under that tribe's sovereign immunity. *See Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010).

54. To determine if a particular entity is entitled to sovereign immunity, the majority of courts have adopted the framework laid out in *Breakthrough*, which analyzed "(1) [the entities'] method of creation; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) whether the tribe intended for the entities to have tribal sovereign immunity; (5) the financial relationship between the tribe and the entities; and

(6) whether the purposes of tribal sovereign immunity are served by granting immunity to the entities." *Breakthrough* at 1183, 1187-88.

55. These so-called "tribal lenders" usually do not survive scrutiny when examined closely, since virtually all business functions occur far from tribal land, are conducted by nontribal members, and overwhelmingly benefit non-tribal members to such a degree that tribal involvement is effectively nil.

56. Where non-tribal individuals and entities control and manage the substantive lending functions, provide the lending capital necessary to support the operation, and bear the economic risk associated with the operation, they are not in fact "operated" by Native American tribes and, therefore, are not shielded by sovereign immunity.

57. Further, sovereign immunity, even if legitimately invoked, still does not turn an otherwise illegal loan into a legal one. *See, e.g., United States v. Neff,* 787 F. App'x 81 (3d Cir. 2019) (upholding criminal convictions of two individuals engaged in an online payday lending rent-a-tribe scheme; sovereign immunity does not transform illegal loans into legal ones, and "reasonable people would know that collecting unlawful debt is unlawful").

58. Attempting to circumvent state interest rate caps by fraudulently hiding behind tribal sovereign immunity has been found to constitute criminal conduct. On October 13, 2017, a jury in the U.S. District Court for the Southern District of New York convicted Scott Tucker and Timothy Muir on fourteen felony counts for their operation of a network of tribal lending companies. *See United States v. Tucker, et al.*, No. 1:16-cr-00091-PKC (S.D.N.Y). The conviction was affirmed in *United States v. Grote*, 961 F.3d 105 (2d Cir. 2020).

## COUNT I - DECLARATORY AND INJUNCTIVE RELIEF AGAINST ILLEGAL CONDUCT

59. Plaintiff incorporates paragraphs 1-58.

60. This claim is against all Defendants.

61. There is a controversy between Plaintiff and the class, on the one hand, and

Defendants, on the other, as to whether Plaintiff and the class members must repay the loans made to them.

62. Declaratory relief will resolve such controversy.

63. An injunction is necessary to prevent Defendants from taking any action to collect the void debts.

## CLASS ALLEGATIONS

64. Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(2).

65. The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made through www.clearairlending.com at more than 9% interest (c) which loan has not been paid in full.

66. Plaintiff may alter the class definition to conform to developments in the case and discovery.

67. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 100 class members.

68. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

69. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

70. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

71. Defendants have acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate.

72. The class is entitled to a declaration that Defendants are not entitled to collect on the loans described, an injunction against any further collection efforts by Defendants, and restitution of all such amounts collected by Defendants.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

    i.    Injunctive relief;

    ii.    Declaratory relief;

    iii.    Restitution of all amounts collected on the loans from members of the class;

    iv.    Costs of suit; and

    v.    Such other and further relief as the Court deems proper.

## COUNT II – ILLINOIS INTEREST ACT

73. Plaintiff incorporates paragraphs 1-58.

74. This claim is against all Defendants.

75. Defendants contracted for and collected loans at more than 9% interest from Plaintiff and the class members, in violation of 815 ILCS 205/4.

76. Plaintiff and the class members are entitled to statutory damages under 815 ILCS 205/6.

## CLASS ALLEGATIONS

77. Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

78. The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made through www.clearairlending.com at more than 9% interest (c) which loan is still outstanding or has been paid on or after a date two years prior to the filing of suit.

79. Plaintiff may alter the class definition to conform to developments in the case and discovery.

80. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 100 class members.

81. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

82. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

83. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

84. A class action is superior for the fair and efficient adjudication of this matter, in that:

    a. Individual actions are not economically feasible.

    b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

    i. Damages as provided in 815 ILCS 205/6.

    ii. Attorney's fees, litigation expenses and costs of suit; and

    iii. Such other and further relief as the Court deems proper.

    iv. Such other and further relief as the Court deems proper.

### COUNT III – PREDATORY LOAN PREVENTION ACT AND ILLINOIS CONSUMER FRAUD ACT

85. Plaintiff incorporates paragraphs 1-58.

86. This claim is against all Defendants.

87. Defendants contracted for and collected loans prohibited by the Illinois Predatory Loan Prevention Act.

88. Violation of the Predatory Loan Prevention Act is a violation of the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.*

## CLASS ALLEGATIONS

89. Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

90. The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made through www.clearairlending.com at more than 36% interest (c) or or after March 23, 2021.

91. Plaintiff may alter the class definition to conform to developments in the case and discovery.

92. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 100 class members.

93. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

94. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

95. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

96. A class action is superior for the fair and efficient adjudication of this matter, in that:

   a. Individual actions are not economically feasible.

   b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

      i.      Compensatory damages;

      ii.     Punitive damages;

      iii.    Attorney's fees, litigation expenses and costs of suit; and

      iv.    Such other and further relief as the Court deems proper.

## COUNT IV – RICO

97. Plaintiff incorporates paragraphs 1-58.

98. This claim is against CT2022 and Does 1-20, who are the RICO "persons."

99. All loans made through www.clearairlending.com to Illinois residents are (a) unenforceable under Illinois law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Illinois law, where ( c) the usurious rate is at least twice the enforceable rate (9%).

100. The loans are therefore "unlawful debts" as defined in 18 U.S.C. § 1961(6).

101. Clear Air Lending is an enterprise affecting interstate commerce, in that it is located outside of Illinois and makes loans to Illinois residents via the Internet.

102. Defendants CT2022 and Does 1-20 are associated with this enterprise.

103. Defendants CT2022 and Does 1-20 conducted or participated in the conduct of the affairs of Clear Air Lending through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. § 1962(c).

104. Plaintiff was deprived of money as a result.

## CLASS ALLEGATIONS

105. Plaintiff brings this claim on behalf of a class.

106. The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of Clear Air Lending at more than 18% interest (all of its loans qualify) (c) which loan was made on or after a date four years prior to the filing of suit.

107. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there

are at least 100 class members.

108. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

    a. Whether the loans at issue are "unlawful debts" as defined in RICO.

    b. Whether Clear Air Lending is an "enterprise."

    c. Whether Defendant CT2022 is associated with the enterprise.

    d. Whether the Does are associated with the enterprise.

    e. Whether Defendants CT2022 and Does 1-20 conducted or participated in the affairs of Clear Air Lending through a pattern of making and collecting unlawful loans.

109. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

110. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

111. A class action is superior for the fair and efficient adjudication of this matter, in that:

    a. Individual actions are not economically feasible.

    b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants CT2022 and Does 1-20 for:

    i. Treble damages;

    ii. Attorney's fees, litigation expenses and costs of suit; and

    iii. Such other or further relief as the Court deems proper.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman (ARDC 0712094)
Dulijaza (Julie) Clark (ARDC 6273353)
Matthew J. Goldstein (ARDC 6339033)
**EDELMAN, COMBS, LATTURNER
      & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

## **JURY DEMAND**

Plaintiff demands trial by jury.

                                           */s/ Daniel A. Edelman*
                                           Daniel A. Edelman

## **NOTICE OF LIEN AND ASSIGNMENT**

      Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

                      */s/ Daniel A. Edelman*
                      Daniel A. Edelman

## **DOCUMENT PRESERVATION DEMAND**

Plaintiff hereby demands that each Defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, class members, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If any Defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendant.

*/s/ Daniel A. Edelman*
Daniel A. Edelman