# **<u>EXHIBIT A</u>**

This is your loan contract (the "Agreement") with Robinson Economic Services DBA Clear Air Lending ("Clear Air Lending"). Robinson Economic Services DBA Clear Air Lending is a corporate subdivision of the Robinson Economic Development Corporation, a wholly owned federally chartered corporation and, an economic development arm of the Robinson Rancheria of Pomo Indians of California (the "Tribe"), a federally recognized and Sovereign Native American Indian Tribe.

As used in this Consumer Loan and Arbitration Agreement, "you" and "your" refer to the applicant for the loan and "we" "us," and "our" refer to Clear Air Lending.

### CONSUMER LOAN AND ARBITRATION AGREEMENT

| | | | |
|---|---|---|---|
| **Creditor:** | Clear Air Lending<br>PO Box 1429<br>Nice, CA 95464 | **Consumer:**<br>**Customer ID:**<br>**Loan Type:** | Jamie Collins<br>█████06<br>Installment Loan |
| **Phone Number:** | 855-431-2542 | **Loan Number** | █████06 |

### TRUTH IN LENDING DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate | FINANCE CHARGE<br>The dollar amount the credit will cost you | Amount Financed<br>The amount of credit provided to you or on your behalf | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled |
|---|---|---|---|
| 699.9943% e | $2,510.09 e | $500.00 | $3,010.09 e |

*Your payment schedule will be:*

| **Frequency of Payments**<br>Bi-Weekly | **Amount of Payments**<br>20 payments of $ 143.34<br>1 final payment of $ 143.29 | **When Payments Are Due**<br>On every other Friday beginning 9/15/2023 |
|---|---|---|

- Late charge: if a payment is late, you may be charged $25.00
- Prepayment: If you pay off your loan early you will not have to pay a penalty, and you will not be entitled to a refund of part of the finance charge.
- See your loan agreement for any additional information about nonpayment, default, and any required repayment in full before the scheduled date.
- All numerical disclosures except the late payment charge disclosure and the payment dates are estimates.

Itemization of the Amount Financed of $500

$500 Amount given to you directly

e means an estimate

SPECIAL NOTICES:

- THIS AGREEMENT CONTAINS AN ARBITRATION AGREEMENT THAT AFFECTS YOUR LEGAL RIGHTS. PLEASE READ IT CAREFULLY.

- YOUR LOAN IS DESIGNED TO ASSIST YOU IN MEETING YOUR SHORT-TERM CASH NEEDS AND IS AN EXPENSIVE FORM OF CREDIT
- YOU CAN SAVE FINANCE CHARGES BY MAKING EARLY PAYMENTS ON YOUR LOAN
- CREDIT COUNSELING SERVICES MAY BE AVAILABLE IN YOUR COMMUNITY FOR CONSUMERS EXPERIENCING FINANCIAL PROBLEMS

**Agreement Date:** August 29, 2023

**1. PROMISE TO PAY:** You promise to pay us all principal and any interest on or before the dates described in the Payment Schedule above or as otherwise agreed to by you and us, along with any fees or other costs due under this Agreement. Due to the mathematics of this type of loan, your final payment may be less than the previous payments. The estimated payments and rates above may also vary if your payments are not received by the dates in the Payment Schedule.

**2. RECEIVING FUNDS:** We will use commercially reasonable efforts to deposit your loan proceeds into the bank account you provide to us (your "Bank Account") on the next business day after you sign this Agreement (the "Agreement Date"). Unavoidable delays including conditions outside of our control (such as transmission cutoff times, conditions imposed by your bank, processing errors, bank holidays, or "acts of God" – collectively "Conditions") may extend the time it takes for you to receive your loan proceeds and may cause a change in the date you receive your funds and affect your APR as disclosed above. You understand that all funding is subject to Conditions which may delay or prevent fund availability, and you agree you will not hold us responsible for any such delay.

**3. INTEREST:** Interest accrues on the unpaid principal balance of your loan beginning on the Agreement Date stated above and continuing until your loan is repaid in full. You will pay interest at a yearly rate of 724.5763%. We calculate interest on a daily basis based on actual days elapsed and a year of 365/366 days. Interest at this rate will continue to accrue after any default, at our discretion.

**4. PAYMENTS & FINANCE CHARGE IMPACT:** Your loan is a fixed-term, fixed-payment, amortized loan. You agree to make payments beginning on 09/15/2023 and continuing thereafter on a bi-weekly basis. Each scheduled payment is $143.34. Your payment schedule (the amount and number of payments) may vary if you pay differently than scheduled (such as if you miss or make a late, partial, or extra payment). If you vary from the schedule, pursuant to Section 16 below we may declare you in default or, in our discretion, enter into a new payment arrangement with you. If we agree to a new payment arrangement, you should contact our customer service department for a copy of your full payment schedule. Note that interest continues accruing on unpaid principal resulting in an increase in your Finance Charge disclosed above. However, if you make a payment earlier than or larger than your scheduled payments, you will pay less interest than the Finance Charge disclosed above. Late payments may incur fees as described in this Agreement. Please be aware that, if the scheduled pay date falls on a weekend or holiday, you acknowledge and agree that we will initiate a debit to your account on the banking day immediately after that scheduled pay date; you should make sure that there are sufficient funds in your account when that occurs.

**5. HOW TO MAKE PAYMENTS:** You may pay your loan using any of the following methods: electronic payments, if you have agreed to the Automatic Payment Authorization Agreement; check; cashier's check; and money order. We do not accept cash out of concerns for your security. You can easily arrange for a money order at any post office. For any method you choose, you need to have agreed to the terms associated with that payment method. You may change your payment method at any time by contacting Customer Service and agreeing to the terms associated with your new payment method. You must allow at least three business days before your scheduled payment date for the change to be effective. Checks or money orders must arrive at Clear Air Lending on or before your payment due date. If you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic funds transfer from your account or to process the payment as a check transaction. If we use information from your check to make an electronic funds transfer, funds may be withdrawn from your account as soon as the same day we receive your payment, and you will not receive your check back from your financial institution. Our acceptance of any payment less than the full amount due or which bears a restrictive endorsement or notation (such as "Payment in Full," "Without Recourse," or "Full Satisfaction") shall not be deemed a settlement of a bona fide dispute unless: (a) the payment is sent to us at PO Box 1429, Nice, CA 95464, Attention: Accounts Receivable; (b) the payment is accompanied by a conspicuous statement (on a separate sheet of paper

from your check or statement) that identifies your account number, the basis of the dispute, and that you are tendering the payment in settlement of the dispute; and (c) we do not reject the payment within ninety (90) days of receipt.

**6. PAYMENT RELIEF AND APPLICATION.** If you are concerned about making a payment, please contact customer service at customerservice@clearairlending.com or 855-431-2542 at least three (3) days before your payment is due so we can, in our discretion, attempt to make alternative arrangements. We will apply your payments in the following order past due interest, past due principal, past due returned item fees, past due late fees, current interest due, current principal, current interest accrued, current returned item fees, current late fees, and unbilled principal.

**7. RETURNED & LATE PAYMENT FEES:** If you make a payment by any means, including electronically, that is not honored or cannot be processed for any reason, including insufficient funds in your designated account, you may be charged a returned payment fee of $30.00. If you fail to make a full payment within three days of your scheduled payment due date, you may be charged a late fee of $25.00. You understand and agree that we will include either fee as part of your loan which must be paid in full. You should also note that your financial institution may also impose a fee if your account does not have sufficient funds to cover any debit processed for payment from such account; you agree that you will not hold us or our agents responsible for any such fees that your financial institution may impose.

**8. PREPAYMENT:** You may choose to pay all or part of your loan early with no prepayment penalty. Early payment will reduce the amount of interest you will pay on your loan. You can make early payments via the customer service portal or by contacting Customer Service at 855-431-2542. Please allow at least three (3) business days for us to process your payment. If you make an extra payment that is less than the total payoff amount, your scheduled payment amount and due dates shown on your Payment Schedule will not change, but your loan may pay off sooner, depending on the amount of the early payment you make and how you make other payments. The amount of your final payment also may change due to these factors.

**9. ACCESSING SERVICES FROM AN INDIAN RESERVATION:** Robinson Economic Services DBA Clear Air Lending, is a corporate subdivision of the Robinson Economic Development Corporation, a wholly-owned federally chartered corporation and an economic development arm of the Robinson Rancheria of Pomo Indians of California (the "Tribe"), a federally recognized and sovereign Native American Indian tribe. The Tribe owns and operates businesses to generate funds needed to run its government, serve its people and preserve its culture. For purposes of this Agreement and under the federal Consumer Protection Act of 2010, the Tribe is considered a state. You understand that your loan is a service offered to you via the internet from the Tribe's trust land, regardless of where you may be situated or access this service, and this Agreement constitutes an agreement for consumer loans within the Tribe's jurisdiction, not in any other state. The Tribe regulates financial services obtained by anyone choosing to access the Tribe's jurisdiction, such as you, under the Robinson Rancheria of Pomo Indians Tribal Lending Ordinance. Clear Air Lending is authorized to offer such services within the Tribe's jurisdiction through a license issued by the Robinson Rancheria Lending Regulatory Commission by mail at PO Box 1429, Nice, CA 95464 or via email at (Email). As an economic arm of the Tribe, Clear Air Lending possesses sovereign immunity which will limit any actions, if any, you may bring in a dispute. For this Agreement, Clear Air Lending grants a limited waiver of its sovereign immunity only as set forth in the Arbitration Agreement. By choosing to visit the Tribe's jurisdiction via the internet and access services offered and regulated under the Tribe's laws, you agree that this Agreement becomes a binding contract when we accept it at our offices on the Tribe's reservation and you freely consent to the Tribe's jurisdiction regarding all aspects of this Agreement.

**10. GOVERNING LAW:** You agree that this Agreement and all aspects of your loan and your relationship with us including all claims or causes of action (contract, tort, equity, statutory or otherwise) shall be subject to, and governed by and enforced in accordance with the laws of the Tribe and applicable U.S. federal law (collectively, the "Governing Law"). By agreeing to this governing law provision, you acknowledge and agree that the laws of the Tribe rather than the laws of your state or any other state will apply. Nothing in this Agreement shall be interpreted to (i) waive any rights you have under U.S. federal law or (ii) prevent you from bringing any individual Claim against us under U.S. federal law, subject to the Arbitration Agreement's prohibition of a jury trial, class actions, class arbitration, and injunctive relief in favor of non-parties.

**11. NO CONTINGENCY:** You acknowledge and agree that we did not require you to obtain any other product

or service from us, or anyone else, in order to obtain your loan.

**12. BANKRUPTCY:** You certify to us that you are not a debtor under any proceeding in bankruptcy and have no intention to file a petition for relief under any chapter of the United States Bankruptcy Code.

**13. NOT MILITARY:** You certify to us that you are not a member of the military or the spouse/dependent of a military member.

**14. CREDIT REPORTING:** We may report information about your loan and your payment behavior to one or more consumer reporting agencies. Late payments, missed payments, defaults, or other reportable events may be reflected on your credit report.

**15. RESCISSION:** You can rescind your loan without incurring any fee by returning, in full, the amount borrowed on or before 3:00 p.m. Pacific Time of the business day following the day on which you received your funds (the "Rescission Deadline"). To illustrate, if you received loan proceeds on a Monday, you have until 3:00 p.m. Pacific Time Tuesday to return the full amount borrowed and rescind your loan (since the weekend is not considered a business day for us, you would have until Monday if you received your loan proceeds on a Friday). You must rescind your loan in writing before the Rescission Deadline, by emailing customerservice@clearairlending.com of(i) your decision to cancel this Agreement and (ii) your authorization for us to debit your bank account for full principal amount of your loan. At your option you may send a check or money order for the full amount, but it must arrive by the Rescission Deadline. If you do not return your loan proceeds by the Rescission Deadline then your attempted rescission will not be valid and you must abide by all repayment obligations in this Agreement.

**16. DEFAULT:** You will be in default under this Agreement if: (a) you provide any false or misleading information; or (b) you fail to make any payment when due within three days of being due or your payment is returned unpaid for any reason. When your loan is in default you have ten days after we notify you to cure the default. If you do not cure a default within the allowed time, we may, at our sole option:

(a) without further action or notice, declare the entire unpaid principal balance and all accrued unpaid interest and fees immediately due ("Accelerate Your Loan") and require you to immediately pay all amounts due and proceed to collect them; and

(b) agree to permit you to correct a payment default by modifying your Loan Schedule and/or payment amounts (a "Payment Arrangement"). If you fail to honor a Payment Agreement's terms, we may modify or terminate the Payment Arrangement and Accelerate Your Loan.

**17. CHANGES:** We reserve the right to change the terms of this Agreement at any time with notice to you as required by Tribal law and applicable federal law. Such changes may apply to the loan and any current amount of outstanding principal and any future payments. We also reserve the right to lower your interest rate and provide you with an updated payment schedule. By continuing to pay the loan, you are accepting the change in terms and will remain obligated to repay your loan in full. If you choose not to accept the changes, you may contact Customer Service to close your account. If you close your account, you will still be required to repay all amounts that you owe on your loan pursuant to the continuing terms of this Loan Agreement.

**18. AGREEMENT TO RECEIVE NOTICES ELECTRONICALLY:** You acknowledge that when you were approved for a loan, you agreed to the terms of our Application Authorization and Electronic Communications Consent. Pursuant to that authorization, you agreed that any disclosures and other information required by the Truth in Lending Act, Regulation Z, The Electronic Funds Transfer Act, Regulation E, The Equal Credit Opportunity Act, Regulation B, Title V of the Gramm-Leach- Bliley Act, Regulation P (or its applicable equivalent), The Fair Credit Reporting Act, and/or any other provision of applicable federal or Tribal Law or regulation may be delivered to you electronically. Except as otherwise provided in this Agreement, you specifically agree that all notices required to be sent to you are effective when emailed or delivered to your last known mail or e-mail address as identified in our records. In addition to the communications covered by the Electronic Consent Authorization, you agree that we may send or provide by electronic communication any notice, communication, disclosure amendment or replacement to the Agreement. All notices to us from you should be forwarded to Clear Air Lending, PO Box 1429, Nice, CA 95464 or emailed to customerservice@clearairlending.com.

**19. ADDITIONAL PROVISIONS:** The parties do not intend the benefits of this Agreement and the associated Arbitration Agreement to inure to any third party, unless expressly stated herein, and nothing contained herein shall be construed as creating any right, claim or cause of action in favor of any such third party. Subject to the terms of the Arbitration Agreement below regarding the Class Action Waiver as defined below, if any part of this Agreement is found invalid or unenforceable, the rest of the Agreement will remain in effect, valid and enforceable.

**20. PUBLICITY:** You grant to us or to any third party the right to make any commercial or noncommercial use of your statements and opinions about Clear Air Lending and its products and services, as well as your name and image, for advertising, publicity, and any other legal purpose.

**21. ASSIGNMENT; WAIVER:** You may not assign this Agreement to any other party. We may assign this Agreement or delegate any or all of our rights and duties under this Agreement to any third party without notifying you. No delay or omission by us in exercising any rights or remedies hereunder shall impair or waive such right or remedy.

**22. ENTIRE AGREEMENT:** This Agreement and any other written agreement you entered with us in obtaining this loan constitute the entire agreement between us and supersedes all prior agreements, understandings, statements or proposals, and representations, whether written or oral. Subject to the provision above regarding "Changes," this Agreement and any other written agreement you entered into with us in obtaining this loan may not be modified except by written amendment signed by both parties.

**23. DISPUTES.** We both agree that any disputes regarding this Agreement will be decided pursuant to the terms set forth in the Binding Confidential Arbitration Agreement, Class Action Waiver and Jury Trial Agreement below (the "Arbitration Agreement") unless you timely opt out of such process as set forth below.

# BINDING CONFIDENTIAL ARBITRATION AGREEMENT, CLASS ACTION WAIVER AND JURY TRIAL AGREEMENT.

**What is Arbitration.** Arbitration is a confidential process in which persons with a dispute waive their rights to have disputes resolved by a court or jury. Instead, the parties agree to submit all claims and disputes to a neutral third person (an "arbitrator") for an award or decision. Arbitration proceedings are private and less formal than court proceedings. Other rights that you or we might have in court, such as the right to appeal, generally are more limited in arbitration. A final arbitrator's decision is binding on both you and us, except to the extent the decision may be vacated, modified, or corrected under the Federal Arbitration Act, 9 U.S.C. §§1-16 ("FAA").

**Agreement to Arbitrate.** Unless prohibited by federal law, you and we agree to arbitrate all disputes and claims through confidential binding individual arbitration, except for claims regarding the validity, scope, or enforceability of this Arbitration Agreement, which will be determined in court.

**What Rights You are Waiving.** Since both you and we agree that we will resolve all disputes through individual arbitration, (a) WE ARE EACH WAIVING THE RIGHT TO A COURT OR JURY TRIAL; and (b) ALL DISPUTES SHALL BE ARBITRATED ON AN INDIVIDUAL BASIS. YOU AND WE ARE WAIVING THE ABILITY TO SERVE AS A PRIVATE ATTORNEY GENERAL OR BRING A CLASS ACTION, REPRESENTATIVE ACTION, CLASS ARBITRATION OR ANY SIMILAR PROCEEDING (the "Class Action Waiver")

**What is Covered.** All claims asserted by us against you or your heirs, successors, representatives, or assignees. All claims asserted by you against us and/or any of our direct or indirect parent companies or entities, affiliated entities, vendors, or service providers, and each of their employees, agents, representatives, directors, officers, shareholders, governors, managers, members, and other affiliated persons (hereinafter collectively referred to as "related third parties"), including, without limitation, claims for money damages and/or equitable or injunctive relief.

**Who is Covered.** This Arbitration Agreement, in addition to us and you, covers our and your heirs, successors, representatives, and assigns, and our related third parties.

**What Law Applies to This Arbitration Agreement.** This Arbitration Agreement involves interstate commerce. It shall be governed by the FAA and applicable federal law (including federal common law applicable to controversies with sovereigns). The Arbitrator shall decide all issues relating to the merits of any claims, including among other things conflicts of laws, defenses to contract, remedies, or whether the Governing Law provision in the Loan Agreement is enforceable. In the event that Tribal Law or applicable federal law does not provide guidance or precedent authority may be supplemented by an American Law Institute's most Restatement of laws.

**Opting Out of Arbitration.** You (but not we) shall have the right to opt out of this Arbitration Agreement, at any time within 21 calendar days following your signing of this Agreement. To opt out of this Arbitration Agreement, you must provide us written notice either by certified, registered, or return-receipt requested mail to us at the following address: PO Box 1429, Nice, CA 95464, Attention: Arbitration Opt Out or via email to arbitrations@clearairlending.com The written notice must include your full name, address, account number, phone number, and the statement that "I reject the Arbitration Agreement contained in my Loan Agreement" and be physically or electronically signed by you. Notice is considered delivered when postmarked if sent by mail or delivered if sent by email. If you opt out of this Arbitration Agreement, all other parts of the Loan Agreement remain in full force and effect.

**Steps Before Arbitration.** As a precondition to filing a claim, we each agree to attempt to resolve the dispute informally and on an individual basis. The party that believes they have a claim should email or write the other party explaining the details of the potential claim and a proposed resolution. If you need to contact us, please email us at complaints@clearairlending.com if you and we cannot resolve the dispute within 15 days of start of the informal process, either you or we may start arbitration. All settlement offers and discussions made during the informal process are confidential and neither you nor we can disclose them to the arbitrator. If you are represented by an attorney or settlement company, that representative must send you a copy of all settlement offers from us. You may not proceed with any suit or claim until you have participated in informal dispute resolution with us.

**Starting the Arbitration Process.** If either party or a related party has exhausted informal options in resolving a dispute or claim, that party may send the other party by certified mail a written notice to commence Arbitration. The written notice must describe all claims and the relief requested. Regardless of who demands arbitration, you have the right to choose between the American Arbitration Association (1-800-778-7879) or http://www.adr.org; or JAMS (1-800-352-5267) or http://www.jamsadr.com, to administer the arbitration. If one or more arbitration administrators or arbitrators are unable or refuse to act as an administrator or arbitrator, then the parties shall select a mutually agreeable administrator or arbitrator to address the claim(s). If you demand Arbitration, you must inform us of the arbitration organization you have selected in your notice to arbitrate. If we or a related third party demand arbitration, you must notify us in writing of your choice for an arbitration organization within ten (10) days of receiving an arbitration notice. If you fail to choose an arbitration organization by the deadlines, we will have the right to choose one.

**Responding to an Arbitration Request.** The party receiving notice of arbitration shall respond in writing by certified mail within thirty (30) days or such other time period upon which the parties agree in writing.

**Where Will the Arbitration Occur.** For your convenience, you may choose to participate in any arbitration proceeding via telephone or other mutually agreed upon electronic platform. If you want to have the proceeding in person, you may request that the arbitration occur within thirty (30) miles of your residence or some other mutually agreed upon location or as the arbitrator dictates.

**Who Pays for Arbitration Costs.** Regardless of who demands arbitration, we will advance your portion of the arbitration expenses, including the filing, administrative, hearing and arbitrator's fees (collectively, the "arbitration fees") at your request. Each party shall bear his or her own attorneys' fees and expenses, unless otherwise provided by applicable law. If the arbitrator finds in your favor, you will not need to reimburse us the arbitration fees. If the arbitrator does not find in your favor, then you may be required to repay the arbitration fees. However, if you are required to repay the arbitration fees, the amount will not exceed the filing fee(s) and other costs you would have paid had the dispute been adjudicated in court.

**Procedural Rules.** The arbitration will proceed according to the rules and procedures used by the applicable arbitration organization for consumer disputes, to the extent those rules and procedures do not contradict the

express terms of this Arbitration Agreement. You may obtain a copy of the rules and procedures by contacting the arbitration organization listed above.

The arbitrator shall apply the Governing Law including applicable statutes of limitation, and shall honor claims of privilege permitted by the Governing Law. The arbitrator may decide, with or without a hearing, any motion that is substantially similar to a motion to dismiss for failure to state a claim or a motion for summary judgment. The arbitrator shall not be bound by rulings and awards in prior arbitrations involving different customers. If an arbitrator, appellate arbitrator(s), or a final non-appealable judgment of a court having jurisdiction over this transaction and the parties finds, for any reason, that the FAA does not apply to this transaction, then this Arbitration Agreement shall be governed by the laws of the Robinson Rancheria of Pomo Indians ("Tribal Law"), specifically, Section 2.05.060, of the Robinson Rancheria of Pomo Indians Tribal Code.

**What Damages are Available.** The arbitrator may award the same damages as a court including without limitation statutory, or treble damages if allowed by the Governing Law. The arbitrator may award injunctive relief in favor of the individual party seeking relief, but not in favor of others. The arbitrator may not award class, representative, or public injunctive relief. Arbitrators may award you reasonable attorneys' fees and expenses if allowed by the Governing Law. We cannot recover our attorneys' fees and costs in arbitration unless the arbitrator decides that your Claim is frivolous and the arbitration rules allow it. If a court decides that these limits on injunctive relief are not enforceable, then after all appeals from that decision have been exhausted, the Claim for injunctive relief must be severed from the arbitration. The Claim may then be brought in court after arbitration of the remaining Claims is completed

**The Arbitrator's Award.** The arbitrator shall issue a reasoned award or decision. You or we may request that the arbitrator explain his or her decision in writing, if such a request is made within 14 days of the decision. The arbitrators award shall not be considered final until appellate rights have been exhausted or the time for filing the notice of appeal pursuant to this Arbitration Agreement and the Appellate Rules has expired.

**Appealing an Award.** You and we agree that the arbitrator's award or decision may be appealed pursuant to the AAA's Optional Appellate Arbitration Rules or the JAMS Optional Arbitration Appeal Procedures ("Appellate Rules"). Following the appeal process or expiration of the time in which to appeal, the decision or award rendered by the appeal arbitrator(s) is final, binding, confidential, and may be entered in the United States District Court for the federal judicial district in which you reside.

**Grounds for an Appeal.** Appeals must satisfy at least one of three criteria to succeed. The arbitrator(s) who issued the award must have made one or more of the following:

   a. An error of law that is material and prejudicial.
   b. Determination(s) of fact that is/are clearly erroneous.
   c. The arbitrator's award is arbitrary or capricious.

**What Happens During an Appeal.** Once an appeal has been timely filed:

   a. The award is not considered final for purposes of seeking relief from a court as provided by the FAA.
   b. The time period for filing judicial proceedings is tolled while the appellate process is pending.
   c. The parties are required to ask the court to stay any already-initiated judicial proceedings until the conclusion of the appeal.

**Appellate Decisions.** The appellate arbitrator(s) will issue a decision within 30 days of oral argument or such period as the arbitrator(s) require. The majority decision of the appellate arbitrator(s) may arrive at three potential outcomes:

   a. confirm the initial award.
   b. issue a new award or decision.
   c. request additional information and extend the period for issuing a final decision by 30 days.

**Enforcing An Award.** If needed, enforcing arbitration or a final arbitration award may be accomplished in your choice of either Tribal Court or the United States Court for the judicial district in which you reside (either a "Chosen Forum"). Clear Air Lending hereby provides a limited waiver of its sovereign immunity for such an enforcement action when made by you and no other party, regarding only your Agreement, for an action in

only a Chosen Forum, and which expires six months after the termination of your Loan Agreement.

**What is the Term of this Arbitration Agreement.** Unless you have followed the procedure for opting out of arbitration, this Arbitration Agreement continues in full force and effect, even if your obligations have been paid or discharged through bankruptcy. This Arbitration Agreement survives any cancellation, termination, amendment, expiration or performance of any transaction between you and us and continues in full force and effect unless you and we otherwise agree in writing. If any part of this Arbitration Agreement other than the Class Action Waiver is held invalid or unenforceable, the remainder shall remain in effect, valid and enforceable. If the Class Action Waiver is held to be invalid or unenforceable, this entire Arbitration Agreement (but not any other portion of the Loan Agreement) shall be null and void.

**Confidential Process.** All arbitration proceedings under this Arbitration Agreement and all associated decisions and awards of the arbitrator and appellate arbitrator(s) shall be confidential except to the extent required to enforce or confirm the arbitrator's award or decision in an allowed court. Any party filing information or documents regarding the arbitration in such court shall follow the court's procedures to make such filings under seal, unless the court denies the filing party's request to make such filings under seal for reasons other than failure to comply with the applicable rules governing filings under seal.

**YOU UNDERSTAND AND AGREE THAT THIS LOAN IS NOT INTENDED TO MEET LONG TERM FINANCIAL NEEDS.**

**By electronically signing this Agreement below**, you certify that the information given in connection with this Agreement is true and correct. You authorize us to verify the information given in connection with this Agreement, and you give us consent to obtain information about you from consumer reporting agencies or other sources. **You acknowledge, represent and warrant that: (a) you have read, understand, and agree to all of the terms and conditions of this Agreement, including the Arbitration Agreement, and the Class Action Waiver, (b) this Agreement contains all of the terms of the agreement between you and us and that no representations or promises other than those contained in this Agreement have been made, (c) you have reviewed and been given the option to print or retain a copy of this Agreement before you signed it, as well as our privacy policy, and (d) you have the ability to print or retain a completed copy of this Agreement.**

| Signature | Date Signed | Signature IP | Contract # |
|-----------|-------------|--------------|------------|
| Jamie Collins | 08/28/2023 | ███████████ | ███████06 |

# DISBURSEMENT AND PAYMENT CHOICE AUTHORIZATION

This Disbursement and Payment Choice Authorization will be incorporated into any Loan Agreement with us should you decide to finalize the loan process.

The words "you" and "your" mean the Borrower who has electronically consented to this Authorization. The words "we", "us" and "our" mean Clear Air Lending and our successors and assigns.

# DISBURSEMENT AUTHORIZATION

By completing and electronically (signing) this Disbursement and Payment Choice Authorization, you authorize us to electronically transfer the proceeds of your loan with a credit deposit to the following bank account (the "Bank Account"). Please review the account information for accuracy.

| Bank Name | ███████████████ |
|---|---|
| Transit ABA Number | ██████ |
| Deposit Account Number | ██████ |

We will make this electronic credit by using any commercially available method we choose, such as (but not limited to) Automated Clearing House (ACH) entries, and transactions through your debit card accessing your Bank Account.

# PAYMENT CHOICE AUTHORIZATION

**PLEASE SELECT BY CHECKING ONE OF THE OPTIONS LISTED BELOW:**

**OPTION 1:**

◉ **PAYMENT BY ELECTRONIC FUNDS TRANSFER:**

You authorize Clear Air Lending to use electronic funds transfers to process debits from the Bank Account listed above on each payment due date, plus any late payment fees, or other fees, as disclosed in your Loan Agreement.

**BY CHOOSING THIS METHOD:**
**YOU WILL RECEIVE A 25% APR DISCOUNT, RESULTING IN A LOWER SCHEDULED PAYMENT THAN IF YOU SELECT MANUAL PAYMENT, AND WILL NOT BE CHARGED ANY PAYMENT PROCESSING FEES.**

**OPTION 2:**

○ **MANUAL PAYMENT:**

You choose to send your payments directly to Clear Air Lending at the address listed below, and understand that you will not receive an APR discount, furthermore, by electing this method of payment you agree to make each payment on the Loan by cashier's check, money order, or personal check which could be an additional expense to you. Each payment must **be received by Clear Air Lending no later than the payment due date** at:
Clear Air Lending
PO Box 1429
Nice, CA 95464

**BY CHOOSING THIS METHOD:**
**YOU WILL NOT RECEIVE AN APR DISCOUNT AND YOUR PAYMENT WILL BE HIGHER THAN IF YOU SELECT PAYMENT BY ELECTRONIC FUNDS TRANSFER.**
**YOU UNDERSTAND A LATE FEE OF $25.00 WILL BE ASSESSED IF YOUR PAYMENT IS NOT RECEIVED AT THE ABOVE ADDRESS ON OR BEFORE YOUR PAYMENT DUE DATE.**

**YOU ACKNOWLEDGE RECEIVING AND READING A COMPLETED COPY OF THIS DISBURSEMENT AND PAYMENT CHOICE AUTHORIZATION BEFORE ELECTRONICALLY SELECTING A CHOICE. YOU ACKNOWLEDGE YOUR ABILITY TO DOWNLOAD OR PRINT A FULLY- COMPLETED COPY OF THIS AUTHORIZATION FOR YOUR RECORDS.**

**BY SELECTING A BOX ABOVE, YOU ARE ELECTRONICALLY SIGNING THIS DISBURSEMENT AND PAYMENT CHOICE**

**AUTHORIZATION AND AGREEING TO ALL THE TERMS OF IT.**

The selection of the box above is your electronic signature and verifies that you agree to all of the terms of this Authorization.

**ADDITIONAL INFORMATION:**

If you are in default on your loan as explained in the Loan Agreement, and you elected electronic repayment as your choice of repayment, then you authorize us to process one or more debits to pay all principal, finance charges and other amounts due to us as provided in the Loan Agreement. You authorize us to reprocess debits for the same amounts if any attempted payment transaction is dishonored. We will provide you with 10 days' notice prior to processing a debit entry that is larger than the regular scheduled payment detailed above.

You agree that this Authorization will remain in effect until your loan, including principal, finance charges and other fees, is paid in full. **However, you may revoke your authorization of automatic payment at any time by calling us at 855-431-2542 or emailing us at customerservice@clearairlending.com. Your revocation of automatic payments may take up to 3 business days after we receive it to be effective. If you revoke your authorization, then you agree to make payments directly to us as explained above. Please note: if your scheduled payment has already been submitted to your financial institution at the time of revocation, it may be necessary for us to wait until that payment posts before we can refund you that payment amount. However, when possible, at the time of revocation, we will void any pending payment(s).**

**YOU UNDERSTAND THAT REVOKING YOUR AUTHORIZATION DOES NOT RELIEVE YOU OF THE RESPONSIBILITY OF PAYING ALL AMOUNTS DUE IN FULL THAT ARE OWED BY YOU UNDER THE LOAN AGREEMENT.**

# EXHIBIT B

Self Service - Clear Air Lending



Privacy Policy | Terms of Use

Robinson Economic Services, DBA Clear Air Lending loans are designed to help you meet short term borrowing needs. These loans are an expensive form of credit and are not intended to provide a long term credit solution to meet financial needs. Alternative forms of credit may be a less expensive and more suitable source of funding.

Clearairlending.com is a website owned and operated by Robinson Economic Services DBA Clear Air Lending. Robinson Economic Services DBA Clear Air Lending is a corporate subdivision of the Robinson Economic Development Corporation, a wholly owned federally chartered corporation and an economic development arm of the Robinson Rancheria of Pomo Indians of California (the "Tribe"), a federally recognized and sovereign Native American Indian Tribe. This service is offered to you via the internet from the Tribe's trust land, regardless of where you may be situated or access this site, and constitutes an offer or solicitation for consumer loans solely within the Tribe's jurisdiction, not any other state. The Tribe does not allow access or accept applications for this service from residents of all locations, and the service may or may not be available at your location. The location from which the tribe chooses to allow access to its jurisdiction may change from time to time without notice. The Tribe regulates

Email Us

Chat with Us

Clear Air Lending
P.O. Box 1429
Nice, CA 95464

Self Service - Clear Air Lending

financial services obtained by anyone choosing to access the Tribe's jurisdiction, such as you under the Tribe's Tribal Lending Ordinance. Clear Air Lending is authorized to offer such services within the Tribe's jurisdiction through a license issued by the Robinson Rancheria Lending Regulatory Commission. If you choose to visit the Tribe's jurisdiction through the internet and access services offered and regulated under the Tribe's laws, you must consent to the Tribe's jurisdiction and agree that Tribal law governs such services, and will become binding when we accept them at our offices on the Tribe's land.

Applications approved by 4:00 pm PST Monday thru Friday are typically funded the next business day. Clear Air Lending may perform credit checks or otherwise verify the personal and financial information submitted on your application through traditional and alternative credit bureaus. If we are unable to verify your application information electronically, we will perform a manual verification in which you will be asked to provide certain documents. Manual verification may delay your loan decision, if you are approved funding. First time Clear Air Lending customers may qualify for a loan of $300.00 to $1000.00. Customers with good payment history may qualify for subsequent loans up to a maximum of $2,000 at a reduced APR. Complete disclosures of APR, fees, and payment terms are set forth in the loan agreement which you should read before you sign and obtain funds. Your loan may be repaid at any time without penalty.

© 2023 Robinson Economic Services, LLC | All Rights Reserved

# EXHIBIT C

WHOIS search results

 **GoDaddy**

  

# Search the WHOIS Database

| clearairlending.com | Search |
|---|---|

## WHOIS search results

Domain Name: clearairlending.com
Registry Domain ID:
2644756862_DOMAIN_COM-VRSN
Registrar WHOIS Server:
whois.godaddy.com
Registrar URL:
https://www.godaddy.com
Updated Date: 2023-02-
27T23:05:24Z
Creation Date: 2021-09-30T13:40:21Z
Registrar Registration Expiration Date:
2026-09-30T13:40:21Z
Registrar: GoDaddy.com, LLC
Registrar IANA ID: 146
Registrar Abuse Contact Email:
abuse@godaddy.com
Registrar Abuse Contact Phone:
+1.4806242505
Domain Status: ok
https://icann.org/epp#ok
Registry Registrant ID: Not Available
From Registry
Registrant Name: Austin Malicay
Registrant Organization: Pinoleville
Pomo
Registrant Street: 500 B Pinoleville Rd
Registrant City: Ukiah

## Find your Domain

| Find your perfect domain | |
|---|---|

 ## Take a look at these alternate options

PREMIUM ⓘ

**clearairpurifier.com**   $5.00
+$21.99/yr ⓘ  🛒

**clearairlending.net**   $14.99
~~$22.99~~
for the first ⓘ  🛒

WHOIS search results

Registrant State/Province: California
Registrant Postal Code: 95482
Registrant Country: US
Registrant Phone: +1.7074631454
Registrant Phone Ext:
Registrant Fax:
Registrant Fax Ext:
Registrant Email:
amalicay777@post.com
Registry Admin ID: Not Available From
Registry
Admin Name: Austin Malicay
Admin Organization: Pinoleville Pomo
Admin Street: 500 B Pinoleville Rd
Admin City: Ukiah
Admin State/Province: California
Admin Postal Code: 95482
Admin Country: US
Admin Phone: +1.7074631454
Admin Phone Ext:
Admin Fax:
Admin Fax Ext:
Admin Email: amalicay777@post.com
Registry Tech ID: Not Available From
Registry
Tech Name: Austin Malicay
Tech Organization: Pinoleville Pomo
Tech Street: 500 B Pinoleville Rd
Tech City: Ukiah
Tech State/Province: California
Tech Postal Code: 95482
Tech Country: US
Tech Phone: +1.7074631454
Tech Phone Ext:
Tech Fax:
Tech Fax Ext:
Tech Email: amalicay777@post.com
Name Server:
CRUZ.NS.CLOUDFLARE.COM

year

clearairlending .org
$9.99
$22.99
for the first ⑦
year

PREMIUM ⓘ
lojaclearair.com
$50.00
+$21.99/yr ⑦

clearairlending .info
$3.99
$31.99
for the first ⑦
year

Name Server:
TODD.NS.CLOUDFLARE.COM
DNSSEC: unsigned
URL of the ICANN WHOIS Data
Problem Reporting System:
http://wdprs.internic.net/
>>> Last update of WHOIS database:
2023-12-05T16:29:24Z <<<
For more information on Whois status
codes, please visit
https://icann.org/epp
TERMS OF USE: The data contained in
this registrar's Whois database, while
believed by the
registrar to be reliable, is provided "as
is" with no guarantee or warranties
regarding its
accuracy. This information is provided
for the sole purpose of assisting you in
obtaining
information about domain name
registration records. Any use of this
data for any other purpose
is expressly forbidden without the prior
written permission of this registrar. By
submitting
an inquiry, you agree to these terms
and limitations of warranty. In
particular, you agree not
to use this data to allow, enable, or
otherwise support the dissemination or
collection of this
data, in part or in its entirety, for any
purpose, such as transmission by e-
mail, telephone,
postal mail, facsimile or other means
of mass unsolicited, commercial
advertising or solicitations
of any kind, including spam. You
further agree not to use this data to

enable high volume, automated
or robotic electronic processes
designed to collect or compile this
data for any purpose, including
mining this data for your own personal
or commercial purposes. Failure to
comply with these terms
may result in termination of access to
the Whois database. These terms may
be subject to modification
at any time without notice.

**See Underlying Registry Data**


**Contact Domain Holder**


**Report Invalid Whois**

Info displayed in public WHOIS is limited
for privacy reasons. You can learn more
about access to non-public domain
contact information here.


# Get our newsletter, join the community:

Email Address

SIGN UP


We love taking your call.



## guides

# **<u>EXHIBIT D</u>**

B1226-1986 11/08/2022 5:00 PM Received by California Secretary of State

**For Office Use Only**

**-FILED-**

File No.: U220244190833

Date Filed: 11/8/2022

# UCC FINANCING STATEMENT
### FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER** (optional)
Lisa Feagins

**B. E-MAIL CONTACT AT FILER** (optional)
lfeagins@cwlaw.com

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

Return Acknowledgement to:

Capitol Corporate Services, Inc.
455 Capitol Mall Complex, Ste 217
Sacramento, CA 95814
800.327.4842

CAPITOL SERVICES

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Robinson Economic Services, a subdivision of the Robinson Economic Development Corporation | | | | |

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1445 E. Highway 20 | NICE | CA | 95464 | USA |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| CT2022 FIN 1 LLC | | | | |

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5608 S. Fourteenth Street | Fort Smith | AR | 72901 | USA |

**4. COLLATERAL:** This financing statement covers the following collateral:

See Exhibit A for description of collateral (3 pages)

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

**6a.** Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

**6b.** Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION** (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**
File in CA Secretary of State—UCC division

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

SQO 1339607 A

Exhibit "A"

Description of Collateral and defined terms

"Collateral" means and includes the following items or types of property, subject to any exceptions hereinafter set forth:

(1)    any and all net receipts, receivables, net revenues, and rents received by the Debtor from the operations of any business or enterprise or otherwise;

(2)    all present and future deposit accounts of the Debtor, including but not limited to the Collateral Deposit Account and the Collection Account, the funds on deposit and all proceeds therefrom, and any and all certificates of deposit;

(3)    the Eligible Assets, including but not limited to all payment and participation rights and interests to such Eligible Assets;

(4)    all property and assets, real or personal, tangible or intangible, now existing or hereafter acquired, of Debtor that may at any time be or become subject to a security interest or lien in favor of Lender as security for the Indebtedness, including, without limitation, all property (personal or real), goods, money, accounts, deposit accounts, payment intangibles, general intangibles, promissory notes, contract rights, documents and instruments, chattel paper (including electronic chattel paper), letters of credit, letters of credit rights, securities, securities accounts and security entitlements, guaranties, investments, investment property, insurance proceeds (including insurance proceeds payable with respect to, or claims against any other person with respect to, loss or damage to all or any part of the Collateral), any and all commercial tort claims, commodity accounts, commodity contracts, financial assets, health care insurance receivables, and any and all other tangible or intangible property received upon the voluntary or involuntary sale, lease or other disposition of or collections with respect to any of any Collateral, now or hereafter owned, held or acquired;

(5)    all Intellectual Property of the Debtor;

(6)    all proceeds and products of any of the Collateral, now existing or hereafter acquired; provided, that the designation of proceeds for purposes of the Collateral does not authorize Debtor to sell, transfer or otherwise convey any of the Collateral except in the ordinary course of Debtor's business or as otherwise provided herein;

(7)    all books, records, data, plans, manuals, computer software object code, computer tapes, computer systems, computer disks, computer programs, pertaining directly or indirectly to the Collateral and all rights to retrieve data and other information pertaining directly or indirectly to the Collateral from third parties.

"Consumer Contract" means: (a) a cash advance contract and the Truth in Lending Act disclosure executed by a Consumer Obligor in favor of Debtor relating to an unsecured consumer loan made in conformity with all applicable Consumer Financial Services Laws and Tribal Laws

B1226-1987 11/08/2022 5:00 PM Received by California Secretary of State

with a Consumer Obligor; (b) all rights, title, and interest, including all rights of repayment, under the Consumer Contract Documents and all instruments and documents arising therefrom or relating thereto; and (c) all proceeds arising therefrom or relating thereto (including, but not limited to, any personal property (if any) acquired in connection with the exercise of any remedy relating to a Consumer Contract).

"Consumer Contract Documents" means all instruments, promissory notes, documents, and agreements entered into, by a Consumer Obligor with Debtor, and evidencing or executed in connection with the application for or disclosure with respect to a Consumer Contract, including, but not limited to, a Consumer Contract.

"Consumer Financial Services Laws" means all federal and Tribal laws, rules, or regulations dealing with consumer financial services, consumer loans or short term cash advances. The term includes, without limitation, any and all applicable federal and Tribal laws dealing with registration, licensing, advertising, fair lending, language requirements, origination, pricing, credit practices, disclosures, rates, terms, servicing, debt collection practices, fair credit reporting, communications, privacy, data security, unfair acts or practices, deceptive acts or practices, abusive acts or practices, complaint procedures, and dispute resolution. The term includes, without limitation, the following laws or standards as applicable: Equal Credit Opportunity Act, 15 U.S.C. § 1691 et seq., and Regulation B, 12 C.F.R. Part 1002; Electronic Funds Transfer Act, 15 U.S.C. § 1693 et seq., and Regulation E, 12 C.F.R. Part 1005; Fair Debt Collection Practices Act, 15 U.S.C. § 1692o, and Regulation F, 12 C.F.R. Part 1006; Gramm-Leach-Bliley Privacy Act, 12 U.S.C. § 6801 et seq., and Regulation P, 12 C.F.R. Part 1016; Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., and Regulation V, 12 C.F.R. Part 1022; Truth in Lending Act, 15 U.S.C. § 1601 et seq., and Regulation Z, 12 C.F.R. Part 1026; regulations or standards of the Consumer Financial Protection Bureau with respect to unfair, deceptive or abusive acts or practices, 12 U.S.C. § 5531 and § 5536; Servicemembers Civil Relief Act, 50 U.S.C. § 3901 et seq.; Military Lending Act, 10 U.S.C. § 987 et seq.; and Regulations or trade practice standards of the Federal Trade Commission with respect to unfair or deceptive acts or practices, 15 U.S.C. § 5(a), and Title 16 of the Code of Federal Regulations.

"Consumer Obligor" means each consumer in any way obligated to repay a Consumer Contract.

"Debt" means as to any Person at any time (without duplication) all items of indebtedness, obligation or liability for borrowed money of a Person, whether mature or unmatured, liquidated or unliquidated, direct or indirect, absolute or contingent, joint or several, in each case that should be classified as debt in accordance with GAAP.

"Eligible Assets" means all consumer loans made pursuant to Consumer Contracts if such Consumer Contracts: (a) comply with the Eligibility Criteria established by Debtor and Lender; and (b) are pledged to Lender and in respect of which Lender has a perfected first priority lien not subject to any other liens or claims of any kind. Lender reserves the right to modify eligibility standards for Consumer Contracts, and to establish protective and valuation reserves, and limits in its commercially reasonable discretion.

"<u>Intellectual Property</u>" means all intellectual and similar property of every kind and nature, including inventions, designs, patents, copyrights, licenses, trademarks, trade secrets, confidential or proprietary technical and business information, know-how, show-how or other data or information, software and databases and all embodiments or fixations thereof and related documentation, registrations and franchises, and all additions, improvements and accessions to, and books and records describing or used in connection with, any of the foregoing.

"<u>Tribal UCC</u>" means those provisions of the Oklahoma Uniform Commercial Code together with all definitions used, but not contained therein, as may be amended from time to time, that are adopted by the Citizens Business Council, as a law of the Tribe, to apply to the Loan Documents.

"<u>Tribe</u>" and "<u>Tribal</u>" means the Robinson Rancheria, a federally recognized Indian tribe, whose Indian country is located in or near Nice, California, and which is also defined as the Limited Indemnitor herein.

B1226-1989 11/08/2022 5:00 PM Received by California Secretary of State

# **EXHIBIT E**

2022110902116106
11/09/2022 11:42:31 AM Pgs: 1
Fee: $10.00
Kerrie Hudson, Deputy County Clerk
Oklahoma County - State of Oklahoma



## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Lisa Feagins

**B. E-MAIL CONTACT AT FILER (optional)**
lfeagins@cwlaw.com

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

Return Acknowledgement to:

Capitol Services, Inc.
PO Box 1831
Austin, TX 78767
800.345.4647

CAPITOL SERVICES

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Robinson Economic Development Corporation | | | |

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1545 E. Highway 20 | NICE | CA | 95464 | USA |

**2. DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only <u>one</u> Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| CT2022 FIN 1 LLC | | | |

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5608 S. Fourteenth Street | Fort Smith | AR | 72901 | USA |

**4. COLLATERAL:** This financing statement covers the following collateral:

(a) any and all general intangibles, net receipts, receivables, net revenues, and rents received by the Debtor from the operations of any business or enterprise or otherwise ("Pledged Collateral");

(b) all proceeds and products of any of the Pledged Collateral, now existing or hereafter acquired; and

(c) all books, records, data, plans, manuals, computer software object code, computer tapes, computer systems, computer disks, computer programs, pertaining directly or indirectly to the Pledged Collateral and all rights to retrieve data and other information pertaining directly or indirectly to the Pledged Collateral from third parties.

**5.** Check <u>only</u> if applicable and check <u>only</u> one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

**6a.** Check <u>only</u> if applicable and check <u>only</u> one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

**6b.** Check <u>only</u> if applicable and check <u>only</u> one box:
☐ Agricultural Lien ☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION (if applicable):** ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**
File with the Oklahoma County Clerk--UCC Division

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)




2022110902116105
11/09/2022 11:42:31 AM  Pgs: 4
Fee: $10.00
Kerrie Hudson, Deputy County Clerk
Oklahoma County - State of Oklahoma

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Lisa Feagins

**B. E-MAIL CONTACT AT FILER (optional)**
lfeagins@cwlaw.com

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

Return Acknowledgement to:

Capitol Services, Inc.
PO Box 1831
Austin, TX 78767
800.345.4647

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Robinson Economic Services, a subdivision of the Robinson Economic Development Corporation | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1445 E. Highway 20 | NICE | CA | 95464 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| CT2022 FIN 1 LLC | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 5608 S. Fourteenth Street | Fort Smith | AR | 72901 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
See Exhibit A for description of collateral (3 pages)

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
File with OK County Clerk--UCC division

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)



Exhibit "A"

Description of Collateral and defined terms

"Collateral" means and includes the following items or types of property, subject to any exceptions hereinafter set forth:

(1)     any and all net receipts, receivables, net revenues, and rents received by the Debtor from the operations of any business or enterprise or otherwise;

(2)     all present and future deposit accounts of the Debtor, including but not limited to the Collateral Deposit Account and the Collection Account, the funds on deposit and all proceeds therefrom, and any and all certificates of deposit;

(3)     the Eligible Assets, including but not limited to all payment and participation rights and interests to such Eligible Assets;

(4)     all property and assets, real or personal, tangible or intangible, now existing or hereafter acquired, of Debtor that may at any time be or become subject to a security interest or lien in favor of Lender as security for the Indebtedness, including, without limitation, all property (personal or real), goods, money, accounts, deposit accounts, payment intangibles, general intangibles, promissory notes, contract rights, documents and instruments, chattel paper (including electronic chattel paper), letters of credit, letters of credit rights, securities, securities accounts and security entitlements, guaranties, investments, investment property, insurance proceeds (including insurance proceeds payable with respect to, or claims against any other person with respect to, loss or damage to all or any part of the Collateral), any and all commercial tort claims, commodity accounts, commodity contracts, financial assets, health care insurance receivables, and any and all other tangible or intangible property received upon the voluntary or involuntary sale, lease or other disposition of or collections with respect to any of any Collateral, now or hereafter owned, held or acquired;

(5)     all Intellectual Property of the Debtor;

(6)     all proceeds and products of any of the Collateral, now existing or hereafter acquired;  provided, that the designation of proceeds for purposes of the Collateral does not authorize Debtor to sell, transfer or otherwise convey any of the Collateral except in the ordinary course of Debtor's business or as otherwise provided herein;

(7)     all books, records, data, plans, manuals, computer software object code, computer tapes, computer systems, computer disks, computer programs, pertaining directly or indirectly to the Collateral and all rights to retrieve data and other information pertaining directly or indirectly to the Collateral from third parties.

"Consumer Contract" means:  (a) a cash advance contract and the Truth in Lending Act disclosure executed by a Consumer Obligor in favor of Debtor relating to an unsecured consumer loan made in conformity with all applicable Consumer Financial Services Laws and Tribal Laws

with a Consumer Obligor; (b) all rights, title, and interest, including all rights of repayment, under the Consumer Contract Documents and all instruments and documents arising therefrom or relating thereto; and (c) all proceeds arising therefrom or relating thereto (including, but not limited to, any personal property (if any) acquired in connection with the exercise of any remedy relating to a Consumer Contract).

"Consumer Contract Documents" means all instruments, promissory notes, documents, and agreements entered into, by a Consumer Obligor with Debtor, and evidencing or executed in connection with the application for or disclosure with respect to a Consumer Contract, including, but not limited to, a Consumer Contract.

"Consumer Financial Services Laws" means all federal and Tribal laws, rules, or regulations dealing with consumer financial services, consumer loans or short term cash advances. The term includes, without limitation, any and all applicable federal and Tribal laws dealing with registration, licensing, advertising, fair lending, language requirements, origination, pricing, credit practices, disclosures, rates, terms, servicing, debt collection practices, fair credit reporting, communications, privacy, data security, unfair acts or practices, deceptive acts or practices, abusive acts or practices, complaint procedures, and dispute resolution. The term includes, without limitation, the following laws or standards as applicable: Equal Credit Opportunity Act, 15 U.S.C. § 1691 et seq., and Regulation B, 12 C.F.R. Part 1002; Electronic Funds Transfer Act, 15 U.S.C. § 1693 et seq., and Regulation E, 12 C.F.R. Part 1005; Fair Debt Collection Practices Act, 15 U.S.C. § 1692o, and Regulation F, 12 C.F.R. Part 1006; Gramm-Leach-Bliley Privacy Act, 12 U.S.C. § 6801 et seq., and Regulation P, 12 C.F.R. Part 1016; Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., and Regulation V, 12 C.F.R. Part 1022; Truth in Lending Act, 15 U.S.C. § 1601 et seq., and Regulation Z, 12 C.F.R. Part 1026; regulations or standards of the Consumer Financial Protection Bureau with respect to unfair, deceptive or abusive acts or practices, 12 U.S.C. § 5531 and § 5536; Servicemembers Civil Relief Act, 50 U.S.C. § 3901 et seq.; Military Lending Act, 10 U.S.C. § 987 et seq.; and Regulations or trade practice standards of the Federal Trade Commission with respect to unfair or deceptive acts or practices, 15 U.S.C. § 5(a), and Title 16 of the Code of Federal Regulations.

"Consumer Obligor" means each consumer in any way obligated to repay a Consumer Contract.

"Debt" means as to any Person at any time (without duplication) all items of indebtedness, obligation or liability for borrowed money of a Person, whether mature or unmatured, liquidated or unliquidated, direct or indirect, absolute or contingent, joint or several, in each case that should be classified as debt in accordance with GAAP.

"Eligible Assets" means all consumer loans made pursuant to Consumer Contracts if such Consumer Contracts: (a) comply with the Eligibility Criteria established by Debtor and Lender; and (b) are pledged to Lender and in respect of which Lender has a perfected first priority lien not subject to any other liens or claims of any kind. Lender reserves the right to modify eligibility standards for Consumer Contracts, and to establish protective and valuation reserves, and limits in its commercially reasonable discretion.

"Intellectual Property" means all intellectual and similar property of every kind and nature, including inventions, designs, patents, copyrights, licenses, trademarks, trade secrets, confidential or proprietary technical and business information, know-how, show-how or other data or information, software and databases and all embodiments or fixations thereof and related documentation, registrations and franchises, and all additions, improvements and accessions to, and books and records describing or used in connection with, any of the foregoing.

"Tribal UCC" means those provisions of the Oklahoma Uniform Commercial Code together with all definitions used, but not contained therein, as may be amended from time to time, that are adopted by the Citizens Business Council, as a law of the Tribe, to apply to the Loan Documents.

"Tribe" and "Tribal" means the Robinson Rancheria, a federally recognized Indian tribe, whose Indian country is located in or near Nice, California, and which is also defined as the Limited Indemnitor herein.

# EXHIBIT F

**A** Neutral
As of: December 5, 2023 3:42 PM Z

## *Martorello v. Williams*

United States District Court for the Northern District of Oklahoma

April 15, 2019, Decided; April 15, 2019, Filed

Case No. 19-MC-5-JED-JFJ

Reporter
2019 U.S. Dist. LEXIS 63881 *

MATT MARTORELLO, Movant, v. JOHN WILLIAMS, Respondent.

**Prior History:** *Williams v. Big Picture **Loans** LLC, 2018 U.S. Dist. LEXIS 18779 (N.D. Cal., Feb. 5, 2018)*

## Core Terms

subpoena, subpoena-related, documents, motions, attorney-client, exceptional circumstances, underlying litigation, transferred, nonparties, discovery, entities, motion to transfer, outweigh, parties, argues

**Counsel:** [*1] For John Williams, Defendant: Ashley Melissa Bibb, Bobby Leon Latham, Jr, LEAD ATTORNEY, Latham Steele Lehman, TULSA, OK.

For Matt Martorello, Movant: Jeffrey Allen Curran, LEAD ATTORNEY, Gable Gotwals (OKC), OKLAHOMA CITY, OK; Michelle L Alamo, LEAD ATTORNEY, Armstrong Teasdale LLP, DENVER, CO; Richard L Scheff, LEAD ATTORNEY, Armstrong Teasdale LLP (Philadelphia), PHILADELPHIA, PA.

**Judges:** JODI F. JAYNE, UNITED STATES MAGISTRATE JUDGE.

**Opinion by:** JODI F. JAYNE

## Opinion

### OPINION AND ORDER

Before the Court is Movant Matt Martorello's ("Martorello") Motion to Transfer Subpoena-Related Motion to Issuing Court (ECF No. 3) ("Motion to Transfer"), which was referred to the Court by United States District Judge John Dowdell. Respondent John Williams ("Williams") opposes the motion. For reasons explained below, the Court grants the Motion to

Transfer.[1]

### I. Background

On January 23, 2019, Martorello filed a Motion to Compel Compliance with Subpoena for Documents and Deposition from Williams (ECF No. 1) ("Motion to Compel"). The following day, Martorello filed the present Motion to Transfer, seeking an order transferring the Motion to Compel to the issuing court in the Eastern District [*2] of Virginia, pursuant to *Federal Rule of Civil Procedure 45(f)*. On February 13, 2019, Williams filed a Motion to Quash (ECF No. 14), asking the Court to quash the subpoena that is the subject of the Motion to Compel. Because the Court grants the Motion to Transfer, the Court does not reach the merits of any issues presented in the Motion to Compel or Motion to Quash.[2]

The pending motions and the underlying subpoena arise out of the matter of *Williams, et al. v. Big Picture **Loans**, LLC, et al.,* No. 3:17-cv-00461-REP-RCY (E.D. Va. Filed June 22, 2017) ("*Big Picture*"), in which the plaintiffs allege that consumer-***lending*** entities owned by the Lac Vieux Desert Band of Lake Superior Chippewa Indians (the "Tribe") conspired with Martorello to provide ***loans*** to the plaintiffs in violation of Virginia's usury laws. Both the ***lending*** entities and Martorello are named as defendants in *Big Picture*. At issue in *Big Picture* is

---

[1] Courts agree that a ***Rule 45(f)*** motion to transfer constitutes a "non-dispositive" matter for purposes of *28 U.S.C. § 636(b)* that may properly be decided by a magistrate judge. *See, e.g., San Juan Cable LLC v. DISH Network LLC, No. CV 14MC00261RMMJW, 2015 U.S. Dist. LEXIS 35367, 2015 WL 500631, at *2 (D. Colo. Jan. 23, 2015)*.

[2] Although the Motion to Transfer only expressly references the Motion to Compel, the Court's ruling on the Motion to Transfer applies to both the Motion to Compel and the Motion to Quash.

2019 U.S. Dist. LEXIS 63881, *2

whether the *lending* entities, now owned by the Tribe, used the cover of tribal sovereign immunity to avoid application of the usury laws. The presiding judge in *Big Picture*, Senior United States District Judge Robert E. Payne, has already ruled that sovereign immunity does not apply to the defendant entities. *See [*3]* ECF No. 124 in *Big Picture*. The defendant entities have appealed Judge Payne's ruling to the Fourth Circuit Court of Appeals. As a result, Judge Payne has stayed all proceedings as to the defendant entities but has allowed discovery and other matters pertaining to Martorello to proceed.

In this Court, Martorello moved to compel Williams, a local attorney, to produce documents and appear at a deposition pursuant to a subpoena dated January 9, 2019 ("Subpoena"). Martorello argues that Williams was directly involved in the sale transaction at issue in the underlying action, including the negotiation and drafting of the underlying transaction documents effectuating the sale of Martorello's company, Bellicose Capital, LLC ("Bellicose"), to the Tribe. ECF No. 3 at 4. In his response to the Motion to Compel and in the Motion to Quash, Williams argues: (1) the Subpoena, as well as previous subpoenas served on Williams' counsel in South Dakota, are unenforceable because service was defective and he was given an unreasonable amount of time to respond; (2) he possesses no responsive documents; (3) the requested documents and testimony are protected by the attorney-client privilege; and (4) the [*4] requested documents and testimony are not proportional to the needs of the case. ECF Nos. 13, 14.

More specifically, Williams first argues the Subpoena did not allow a reasonable time for compliance. Further, Williams argues service was defective because his Oklahoma counsel agreed to accept service of the Subpoena on the condition that any objections were litigated in Oklahoma, which Martorello breached by filing the Motion to Transfer. Second, Williams states he cannot produce documents because they remain with his former law firm, *Connor* & *Winters*, and he no longer has access to those documents. *See* ECF No. 13 at 10. Third, Williams contends his conversations with Martorello/Bellicose are protected by attorney-client privilege. *See id.* at 3-4. Because Bellicose has since been acquired by Tribal Economic Development Holdings, LLC ("TED"), which is owned by the Tribe, Williams contends that TED now holds the attorney-client privilege regarding all communications between Williams and Martorello/Bellicose. *Id.* According to Williams, TED has instructed him to assert the privilege and refuse to produce communications between him

and Martorello/Bellicose. *Id.* Although Martorello contends that he [*5] seeks only "non-privileged" testimony and documents, Williams responds that Martorello's position on what he considers to be "non-privileged" is unclear. ECF No. 13 at 12. Finally, Williams argues Martorello represented that he already has all the evidence he needs for his defense in *Big Picture*, and it would be unduly burdensome for Williams to provide testimony or documents that Martorello does not intend to use in support of his defense.

## II. Discussion

### A. *Rule 45(f)*

Under *Rule 45*, a court for the district where subpoena compliance is required may quash or modify a subpoena upon timely motion. *See Fed. R. Civ. P. 45(d)(3)*. *Rule 45(f)* authorizes transfer of a subpoena-related motion from the court where compliance is required to the issuing court "if the person subject to the subpoena consents or if the court finds exceptional circumstances." *Fed. R. Civ. P. 45(f)*. The proponent of transfer bears the burden of showing that such "exceptional circumstances" are present. *Fed. R. Civ. P. 45(f)* advisory committee notes to 2013 amendment. Although *Rule 45* does not define "exceptional circumstances," the Advisory Committee notes explain: nonparties, if it is necessary for attorneys admitted in the court where the motion is made to appear in the court in which the action is pending." *Id.*

> The [*6] prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions. In some circumstances, however, transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts. Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion.

*Id.* When faced with a transfer motion, courts must consider "the complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the

Daniel Edelman

2019 U.S. Dist. LEXIS 63881, *6

underlying litigation." _Miller Constr. Equip. Sales, Inc. v. Clark. Equip. Co., No. MC415-013, 2016 U.S. Dist. LEXIS 13578, 2016 WL 447717, at *5 (S.D. Ga. Feb. 4, 2016)_ (quotation omitted). The consistency of outcomes and judicial economy are also paramount considerations in the transfer decision. _See In re Cassell, No., 2:16-MC-00602-DB-EJF, 2016 U.S. Dist. LEXIS 85512, 2016 WL 3645166, at *1 (D. Utah June 30, 2016)_ (noting that transfer would "provide consistency, fairness, and efficiency to all [*7] parties to this Motion and the underlying litigation"). If the motion is transferred, "judges are encouraged to permit telecommunications methods to minimize the burden a transfer imposes on

## B. Exceptional Circumstances

Martorello has satisfied his burden to establish that exceptional circumstances outweigh Williams' interest in local resolution of the dispute and warrant transfer of the Subpoena-related motions to the issuing Virginia court. Specifically, Martorello has shown that (1) the substantive attorney-client privilege issues presented by the Motion to Compel are currently pending in _Big Picture_, and Judge Payne is better situated to decide those issues consistently; (2) numerous subpoena-related motions in _Big Picture_ have already been transferred to the Eastern District of Virginia from other district courts across the county; and (3) _Big Picture_ has already been heavily litigated and any rulings by this Court are likely to disrupt Judge Payne's management of that case.

First, the Eastern District of Virginia is better situated to decide the attorney-client privilege issues in the Subpoena-related motions, which weighs in favor of transfer. Importantly, the issue of the privilege [*8] attaching to communications between Williams and Martorello/Bellicose is currently pending before Judge Payne in _Big Picture_. The plaintiffs in _Big Picture_ have moved to compel production of all documents withheld by Martorello on the basis of attorney-client privilege and the attorney work product doctrine. _See_ ECF Nos. 340 & 341 in _Big Picture_. The plaintiffs in _Big Picture_ also seek disclosure of all advice Martorello received from attorneys regarding certain matters pertaining to the litigation, including advice Williams gave regarding the tribal _lending_ model and its alleged purpose to circumvent applicable state and federal laws. _See_ ECF No. 341 at 18 in _Big Picture_ (specifically mentioning legal advice Williams provided to Martorello). On January 15, 2019, Judge Payne conducted a lengthy motions hearing and discussed discovery issues similar

to those presented here, stating: "[t]he whole thing also involves a claim that lawyers were involved in the structuring of the operation for the purpose of allowing this charade to take place, and that raises the questions of privilege and whether there is a legitimate privilege that will exist or can exist." ECF No. 19-2 at 4 (transcript [*9] of motions hearing held on Jan. 15, 2019). Under these circumstances, the underlying privilege questions presented by the Motion to Compel are best decided by the issuing court.[3]

Second, numerous subpoena-related motions in _Big Picture_ have already been transferred to the Virginia court from other courts across the country. _See Williams, et al. v. Big Picture Loans, LLC, et al., 17-MC-80166-SVK, 2018 U.S. Dist. LEXIS 18779 (N.D. Cal)_ (ECF No. 14 at 4) ("The Virginia court is also better situated to deciding the substance of Martorello's privilege and work product claims due to its familiarity with the issues and parties in the underlying case."); _McFadden v. Williams_, 1:18-MC-83 (W.D. Mich.); _Williams et al. v. Big Picture **Loans** LLC et al._, 6:18-MC-303-DCC (D.S.C.); _Williams v. Big Picture **Loans**, LLC_, 3:19-MC-00001 (E.D. Va.) (ECF No. 22); _Rossette LLP v. Lula Williams, et al._, MC-18-00066-PHXJJT (D. Ariz.) (ECF No. 13); _Galloway v. Martorello_, 8:19-MC-5-T-36AEP (M.D. Fla.) (ECF No. 25). At least one other motion to transfer a subpoena-related motion remains outstanding in the District of Colorado: _Weddle v._

---

[3] The Motion to Compel may also require resolution of procedural arguments raised by Williams, including Williams' contention that his counsel agreed to accept service on the condition that any objections would be litigated in Oklahoma. The Court declines to reach this question prior to transfer for two reasons. First, the Court declines to address Williams' objections to the Subpoena on a piecemeal basis. The substantive issues presented by the Motion to Compel create the exceptional circumstances warranting transfer, and the Virginia court is best situated to decide all issues related to this Subpoena. Second, even if the parties agreed to litigate objections to the Subpoena in Oklahoma, the Court is not bound by such agreement and is authorized to transfer subpoena-related objections to the issuing court when exceptional circumstances exist. _See Fed. R. Civ. P._ 45(f); _Victim Servs., Inc. v. Consumer Fin. Prot. Bureau, 298 F. Supp. 3d 26, 28 (D.D.C. 2018)_ ("Where exceptional circumstances exist, a court may transfer such a subpoena-related motion [under **Rule 45(f)**] _sua sponte_."); _Orix USA Corp. v. Armentrout, No. 3:16-MC-63-N-BN, 2016 U.S. Dist. LEXIS 95104, 2016 WL 3926507, at *2 (N.D. Tex. July 21, 2016)_ (**Rule 45(f)** does not require that a motion to transfer be filed, and the Court may _sua sponte_ order transfer where appropriate.").

2019 U.S. Dist. LEXIS 63881, *9

*Williams et al.*, 1:18-MC-225-RBJ-KLM (D. Colo.). Although [*10] none of the decisions issued in *Big Picture* or the above subpoena-related cases have addressed the precise issue or facts Williams raises in this matter, the similarity of issues and risk of inconsistent rulings weigh heavily in favor of transfer. See *Agincourt Gaming, LLC v. Zynga, Inc., No. 2:14-CV-708-RFB-NJK, 2014 U.S. Dist. LEXIS 114348, 2014 WL 4079555, at *7 (D. Nev. Aug. 15, 2014)* (finding transfer would prevent three different courts from deciding similar issues involving different non-parties); *FTC v. A+ Fin. Ctr., LLC, No. 1:13-MC-50, 2013 U.S. Dist. LEXIS 172472, 2013 WL 6388539, at *3 (S.D. Ohio Dec. 6, 2013)* (finding exceptional circumstances warranted transfer of subpoena-related motions when transferring the matter is in "the interests of judicial economy and avoiding inconsistent results").

Third, the procedural posture of *Big Picture* militates in favor of transfer. The parties in *Big Picture* have heavily litigated that case, as shown by the 463 docket entries to date. See *In re Cassell, 2016 U.S. Dist. LEXIS 85512, 2016 WL 3645166, at *1* (transferring subpoena-related motion where parties had "heavily litigated the case, as evidenced by the 253 docket entries"). During a recent hearing, the Virginia court discussed privilege issues and management of discovery motions pending across the country. Any discovery rulings by this Court are likely to disrupt the overall management of the case. [*11] See *Wultz v. Bank of China, Ltd., 304 F.R.D. 38, 46 (D.D.C. 2014)* (exceptional circumstances warranted transfer where judge in underlying litigation was "in a better position to rule" on subpoena-related motion "due to her familiarity with the full scope of issues involved as well as any implications the resolution of the motion will have on the underlying litigation").

Williams asserts that transfer is not warranted, because the substantive issues involved in the Motion to Compel are "simple." ECF No. 15. Williams claims it is "undisputed" that his discussions with Bellicose/Martorello are protected by the attorney-client privilege and that TED currently holds the right to assert, and does assert, the attorney-client privilege over such communications. *Id.* at 7. However, the issues at stake in the plaintiffs' motion to compel production in *Big Picture* indicate that these matters are in fact disputed, and any rulings by this Court regarding attorney-client privilege would risk both inconsistency with related rulings by Judge Payne and disruption of the overall case management of *Big Picture*. See *In re Cassell, 2016 U.S. Dist. LEXIS 85512, 2016 WL 3645166, at *2* (finding issuing court was "in a superior position to address the nuanced privilege issues raised by th[e] Motion to Quash" where the parties had "already started [*12] addressing" the privilege issue with the issuing court); *The Dispatch Printing Co. v. Zuckerman, 2016 U.S. Dist. LEXIS 10184, 2016 WL 335753, at *3 (S.D. Fla. Jan. 28, 2016)* (noting that, where motions seeking the "same type of information" and raising the same issues are pending in another court, "there is a demonstrable risk of inconsistent discovery rulings"); *Moon Mountain Farms, LLC v. Rural Cmty. Ins. Co., 301 F.R.D. 426, 429 (N.D. Cal. 2014)* (noting that attempting to circumvent authority of presiding judge in underlying action is an exceptional circumstance under *Rule 45(f)*).

Williams also contends that he has a strong interest in local resolution of the dispute, which outweighs any other considerations. The Court agrees that transfer to the Virginia court would place some burden on Williams and his attorney, both of whom are Oklahoma attorneys with offices only in Oklahoma. However, even considering the strong presumption in favor of resolving disputes in the home forum of a non-party witness, the Court finds that Williams' interest in avoiding appearance in Virginia is outweighed by the concerns outlined above. Further, the Advisory Committee notes to *Rule 45(f)* encourage telephonic conferences to minimize the burden of transfer on nonparties when needed. *Fed. R. Civ. P. 45(f)* advisory committee notes to 2013 amendment. The burden imposed on Williams by transfer to the Virginia court is "outweighed by the importance [*13] of consistent management of the underlying litigation and judicial economy." *Moon Mountain Farms, 301 F.R.D. at 430*.

## III. Conclusion

Martorello's Motion to Transfer (ECF No. 3) is **GRANTED**. The Clerk is directed to (1) transfer this case to the Eastern District of Virginia for consideration of Martorello's Motion to Compel and Williams' Motion to Quash (ECF Nos. 1 & 14); (2) terminate the pending motions to compel and to quash; and (3) close this miscellaneous case.

The Court **STAYS** this Order for fourteen (14) days to allow Williams the opportunity to object to this Opinion and Order pursuant to *Rule 72(a)*, if desired.

**SO ORDERED** this 15th day of April, 2019.

/s/ Jodi F. Jayne

**JODI F. JAYNE, MAGISTRATE JUDGE**

2019 U.S. Dist. LEXIS 63881, *13

**UNITED STATES DISTRICT COURT**

**End of Document**

# **<u>EXHIBIT G</u>**

## Continue your application

Email Address

✉

Last four of your SSN

🔒

**LOG IN**

🛡 Privacy & security
P R O T E C T I O N

---

### DON'T HAVE AN APPLICATION IN PROGRESS?

START A NEW APPLICATION







## Manage Your Existing Loan

It's smooth sailing with Clear Air Lending. Schedule your pay off or make an extra payment at any time.
It is *safe, secure, and simple.*

GO TO YOUR ACCOUNT

Privacy Policy  |  Terms of Use

Robinson Economic Services, DBA Clear Air Lending loans are designed to help you meet short term borrowing needs. These loans are an expensive form of credit and are not intended to provide a long term credit solution to meet financial needs. Alternative forms of credit may be a less expensive and more suitable source of funding.

Email Us

Chat with Us

Clearairlending.com is a website owned and operated by Robinson Economic Services DBA Clear Air Lending. Robinson Economic Services DBA Clear Air Lending is a corporate subdivision of the Robinson Economic Development Corporation, a wholly owned federally chartered corporation and an economic development arm of the Robinson Rancheria of Pomo Indians of California (the "Tribe"), a federally recognized and sovereign Native American Indian Tribe. This service is offered to you via the internet from the Tribe's trust land, regardless of where you may be situated or access this site, and constitutes an offer or solicitation for consumer loans solely within the Tribe's jurisdiction, not any other state. The Tribe does not allow access or accept applications for this service from residents of all locations, and the service may or may not be available at your location. The location from which the tribe chooses to allow access to its jurisdiction may change from time to time without notice. The Tribe regulates financial services obtained by anyone choosing to access the Tribe's jurisdiction, such as you under the Tribe's Tribal Lending Ordinance. Clear Air Lending is authorized to offer such services within the Tribe's jurisdiction through a license issued by the Robinson Rancheria Lending Regulatory Commission. If you choose to visit the Tribe's jurisdiction through the internet and access services offered and regulated under the Tribe's laws, you must consent to the Tribe's jurisdiction and agree that Tribal law governs such services, and will become binding when we accept them at our offices on the Tribe's land.

Clear Air Lending P.O. Box 1429 Nice, CA 95464

Applications approved by 4:00 pm PST Monday thru Friday are typically funded the next business day. Clear Air Lending may perform credit checks or otherwise verify the personal and financial information submitted on your application through traditional and alternative credit bureaus. If we are unable to verify your application information electronically, we will perform

a manual verification in which you will be asked to provide certain documents. Manual verification may delay your loan decision, if you are approved funding. First time Clear Air Lending customers may qualify for a loan of $300.00 to $1000.00. Customers with good payment history may qualify for subsequent loans up to a maximum of $2,000 at a reduced APR. Complete disclosures of APR, fees, and payment terms are set forth in the loan agreement which you should read before you sign and obtain funds. Your loan may be repaid at any time without penalty.

© 2023 Robinson Economic Services, LLC | All Rights Reserved